IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 05-cv-00663-RPM

STEVE STUMBO,

    Plaintiff,

v.

AMERISTEP CORPORATION,

    Defendant

---

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT BY DEFENDANT
AMERISTEP CORPORATION

---

The plaintiff is the inventor of a collapsible blind that is the subject of U.S. Patent No. 5,628,338, issued on May 13, 1997 (the '338 Patent). The field of invention of the '338 Patent relates to portable and collapsible shelters or blinds for use by sportsmen, particularly hunters and photographers. ('338 Patent, col. 1, ll. 4-7). The plaintiff's invention is manufactured and distributed by Double Bull Archery, L.L.C. pursuant to a license. Defendant Ameristep Corporation ("Ameristep") is in the business of manufacturing, marketing, distributing and selling various models of portable collapsible hunting blinds. The plaintiff's complaint alleges that Ameristep's "Doghouse," "Brickhouse," and "Bighouse" series of blinds infringe the '338 Patent. Ameristep denies infringement and has asserted counterclaims, seeking declarations of invalidity and non-infringement.

Ameristep moved for summary judgment as to all of the plaintiff's claims, arguing that none of the accused products infringes the patent-in-suit. On December 28, 2006, the court heard argument on this motion and a similar motion filed by Eastman Outdoors, Inc., the defendant in a related case, *Stumbo v. Eastman Outdoors, Inc.*, Civil Action No. 05-cv-00664-RPM.

The '338 Patent claims a cube-shaped hunting blind having four side walls and a top. Its fabric cover is supported by a framework of five support members – one for each side wall and the top. Each of the five support members has four legs connected at one end to a central hub. The legs extend outward from the hub and are attached to the hub by a hinged connection. This hub-and-strut assembly is foldable and allows the blind to be collapsed and erected easily. ('338 Patent, col. 1, l. 50-col.2, l. 22).

The plaintiff concedes that Ameristep's "Doghouse" hunting blinds do not infringe the patent. The accused Ameristep products are those sold under the trademarks "BIGHOUSE™ TSC," "BRICKHOUSE™ TSC," "BRICKHOUSE™ TSC HALF-N-HALF," and "BABY BRICKHOUSE™." Ameristep's Bighouse and Brickhouse products are cube-shaped hub-style blinds.

The central issue is whether the accused products have a "closable vertical opening," as required by the nine claims of the '338 Patent. Claims 1 and 7 are the independent claims of the patent. Claim 1 reads:

1. A portable and collapsible blind or shelter structure comprising:

(a) a flexible fabric cover having four side walls and a top; wherein each side wall includes at least one window opening; wherein each said side wall includes opposite side edges and a top edge; wherein side edges of adjacent side walls are integral with each other; and *further including a closable vertical opening along*

*one of said side edges*; wherein the perimeter of each side wall and the top is non-stretchable; and

(b) a framework comprising five support members; wherein each side support member comprises four resilient leg members hingedly connected at one end to a central hub; wherein one said support member engages and supports said top; and wherein said leg members connected to each said hub can be pivoted towards each other to collapse said structure.

('338 Patent, col. 4, ll. 2-21). Claim 7 reads:

7. A portable and collapsible blind or shelter structure comprising:

(a) a flexible, integral fabric cover having four generally-square side walls and a top; wherein each side wall includes at least one window opening; and further *including a closable vertical opening along one vertical corner of said structure*; wherein the perimeter of each side wall and th etop [sic] is non-stretchable; and

(b) framework comprising five support members; wherein each said support member comprises four resilient leg members hingedly connected at one end to a central hub; wherein one said support member engages and supports a respective side wall in a taut condition; wherein one said support member engages and supports said top; and wherein said leg members connected to each said hub can be pivoted towards each other to collapse said structure.

('338 Patent, col. 4, ll. 36-52). Claims 2-6 depend on claim 1. Consequently, those claims are limited by the term "a closable vertical opening along one of said side edges." Claims 8 and 9 depend on claim 7 and are limited by the term "a closable vertical opening along one vertical corner of said structure."

The plaintiff and defendant dispute the meaning of these claim limitations. The plaintiff contends that these phrases encompass an opening of any shape having a predominately vertical dimension which is positioned along or adjacent to a side edge or vertical corner of the structure. According to the plaintiff's construction, this claim language would cover a triangular flap extending into one side wall, so long as one side of the triangle is positioned along one side edge

or vertical corner of the structure.  The defendant disputes that interpretation, arguing that the claim language, the specification, and the prosecution history show that these terms refer to a vertically extending closable slit bordered by an edge or corner of the tent structure.

"It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history."  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *see also Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996).  The words of the claims are of primary importance. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*); *Vitronics*, 90 F.3d at 1582 (Fed. Cir. 1996).  "[T]he words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips*, 415 F.3d at 1312 (quoting *Vitronics*, 90 F.3d at 1582).  "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."  *Phillips*, 415 F.3d at 1313.

There is no evidence suggesting that the phrase "closable vertical opening" has any special meaning in the hunting blind industry.  The only evidence on that point is the declaration of Mr. Jeffrey A. Pestrue which was submitted by defendant Eastman Outdoors, Inc. in Civil Action No. 05-cv-00664-RPM.  Mr. Pestrue is the chief engineer for Eastman and a person with expertise in the design, development and production of hunting blinds.  Mr. Pestrue stated that the phrase "closable vertical opening" has no special meaning in the hunting blind industry.  (Pestrue dec. ¶ 5).

Resolution of this claim construction dispute involves the application of commonly understood words.  The parties have focused attention on the meaning of the word "vertical."

"The common-sense understanding of 'vertical' or 'vertically' is that those words convey a sense of perpendicularity with respect to the surface of the earth." *Laser Diode Array, Inc. v. Paradigm Lasers, Inc.*, 114 F.Supp.2d 167, 172 (W.D.N.Y. 2000).  General purpose dictionary definitions, which are a type of extrinsic evidence, may be considered in the context of the intrinsic evidence.  *See Phillips*, 415 F.3d at 1314-19.  The plaintiff cites *Merriam-Webster's Collegiate Dictionary* (10th ed. 1998) which includes the following definitions:  "perpendicular to the plane of the horizon or to a primary axis:  UPRIGHT . . . lying in the direction of an axis: LENGTHWISE."  That source also states, "Vertical suggests a line or direction rising straight upward toward a zenith."  The defendant cites *New Oxford American Dictionary* (2d ed. Oxford University Press 2005), which includes the following definitions:  "at right angles to a horizontal plane; in a direction, or having an alignment such that the top is directly above the bottom."

When construing claims, "the context in which a term is used in the asserted claim can be highly instructive."  *Phillips*, 415 F.3d at 1314.  In claims 1 and 7, "vertical" modifies "opening."  This context means that the opening itself must extend lengthwise, in a direction that is straight up and down or perpendicular to the plane of the horizon.

The claim language also requires that the closable vertical opening be along one of the side edges (claim 1) or along one vertical corner of the structure (claim 7).  The position of the opening is described throughout the patent.  The abstract states:  "One corner of the structure includes a vertical opening to permit ingress and egress from the structure."  The following statement appears in the summary of the invention:  "An openable doorway is positioned vertically at one corner of the blind or shelter to enable ingress and egress.  Closure means such as

a zipper is used to close the opening." ('338 Patent, col. 2, ll. 13-15). The following statement appears in the detailed description of the invention:

> A zipper is incorporated in one corner of the structure where two side walls meet. The zipper is stitched in place with non-stretchable thread. The leg members must flex in order to enable the door opening to expand for ingress and egress. When the zipper is in an open position, the fabric adjacent [to] the opening can be pulled slightly away from the opening (which results in widening of the opening as the pegs flex.)

(Col. 3, ll. 28-35). In Figure 1, a vertical slit-like opening positioned at the corner of the blind is shown as element 5. No other type of opening is mentioned in the patent.

The patent's prosecution history is also informative. The application claims were allowed without amendment. The Notice of Allowability included the following Examiner's Statement of Reasons for Allowance:

> The primary reason for the allowance of the claims is the claimed foldable tent structure having a cover which includes a top wall and 4 side walls and a zippered vertical opening at a cornered side edge, 5 frame members each has four resilient legs hingedly connected at one end to a central hub; each frame member engages and supports a respective side wall and the top wall in a taut condition; each leg is pivotable at the hub toward each other to collapse the tent structure. Said tent structure is not shown or taught by the prior art of record.

(Def.'s Ex. A-11). This statement demonstrates that the Examiner considered a vertical opening positioned at a cornered side edge to be a distinguishing feature of the invention. One of the prior art patents cited as a reference in the '338 Patent is U.S. Patent No. 3,810,482 to Beavers (the "'482 Patent"). The '482 Patent discloses a cube-shaped collapsible tent structure having a hub-style assembly similar to that of the '338 Patent. One of the few distinctions between this prior art patent and the plaintiff's invention is that the '338 Patent discloses a vertical opening at a cornered side edge.

The plaintiff has provided the declaration of Rex E. Paulsen, Ph.D., P.E. Mr. Paulsen is a registered professional engineer and has some expertise in tents and patents. Mr. Paulsen's declaration constitutes extrinsic evidence, a category that is less significant than the intrinsic evidence. *See Phillips*, 415 F.3d at 1317. Mr. Paulsen's declaration suffers from errors and deficiencies and is not useful in ascertaining the meaning of the disputed terms. In his discussion of the prosecution history, Mr. Paulsen dismissed the significance of Examiner's Reasons for Allowance without any review of the prior art. Where he did address the '482 Patent, Mr. Paulsen mistakenly stated that the '482 Patent shows a three-sided tent, whereas the specification of the '482 Patent expressly states that the invention is not limited to a structure having three sides and a top. *See* '482 Patent, col 3, ll. 24-38 ("The frame 12 comprises a minimum of four and a maximum of six nearly identically constructed subframe assemblies . . . [in the preferred embodiment] the subframe assemblies which could be positioned in the entryway 18 as well as in the floor area are both left out."). Figure 2 of the '482 Patent shows a tent having four side walls and top, with a triangular entryway in one of the side walls. A similar drawing is shown in U.S. Patent No. 4,819,680 to Beavers. Mr. Paulsen failed to appreciate the full teachings of the Beavers patents and other references cited in the '338 Patent.

The language of the '338 Patent claims, the specification, and the prosecution history support the construction urged by Ameristep in this action and by Eastman Outdoors, Inc. in the related action. The term "a closable vertical opening" means "a slit-like opening that runs straight up and down or perpendicular to the plane of the horizon." "Along one of the side edges" means "over the length of or on a line or course parallel and close to one of the side edges of a wall of the blind." "Along one vertical corner of said structure" means "over the length of or on a line or

course parallel and close to the vertical line formed where two side walls of the blind meet at an angle."

Infringement analysis requires comparison of the patented invention and the accused product on an element-by-element basis. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997). To establish infringement, the plaintiff must show that the accused product contains elements identical or equivalent to each claimed element of the patented invention. *Id.*

Each of the accused Ameristep products has a triangular flap opening that extends sideways on a wall panel. The triangular opening is formed by two zippers. A first zipper extends from an upper corner of a wall panel of the blind toward the center of the wall panel, adjacent to the hub. A second zipper extends from a lower corner of the wall panel toward the center of the wall panel, where it meets the first zipper. When the first and second zippers are unzipped, the resulting triangular flap of fabric may be rolled, leaving a triangular door opening in the wall panel. (Ransom aff. ¶ 4).

The accused products do not literally infringe the claims of the '338 Patent. The triangular flap opening of the accused products is not a slit-like opening running straight up and down or perpendicular to the plane of the horizon. It is not positioned over the length of or on a line or course parallel and close to one of the side edges of a wall of the blind, and it is not positioned over the length of or on a line or course parallel and close to the vertical line formed where two side walls of the blind meet at an angle.

"A device that does not literally infringe a claim may nonetheless infringe under the doctrine of equivalents if every element in the claim is literally or equivalently present in the accused device." *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1423 (Fed. Cir. 1997).

-8-

An established test for equivalence is whether a substitute element in the accused product performs substantially the same function, in substantially the same way, to achieve the same result as an element of the claimed invention. *Hilton Davis*, 520 U.S. at 39-40; *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950). "Although equivalence is a factual matter normally reserved for a fact finder, the trial court should grant summary judgment in any case where no reasonable fact finder could find equivalence." *Sage Prods.,* 126 F.3d at 1423; *see Hilton Davis*, 520 U.S. at 39, n.8.

This case is one in which summary judgment of non-infringement is appropriate. The closable vertical opening of the claimed invention and the triangular flap opening of the accused products perform the same function of permitting ingress and egress, but no reasonable fact finder could conclude that they perform that function in substantially the same manner or that they achieve substantially similar results. A user of the claimed blind must physically expand the vertical opening to enter or exit. This expansion is accomplished by pulling the fabric around the opening slightly away from the opening, which causes the ends of the leg members of the blind to flex. ('338 Patent, col. 3, ll. 28-35). Without such effort, the structure of the blind holds the fabric cover taut and the opening closed. In contrast, the triangular opening of the Ameristep hub-style blinds is opened by unzipping the two zippers, and the triangular flap may be rolled so that the door remains open. The triangular door opening of the Ameristep hub-style blinds may be used for entering and exiting the blind without having to flex or distort the legs of the sub-frame assemblies. A person using one of the accused products does not have to physically hold the door open when entering and exiting.

The claimed invention is primarily intended for hunters, and this distinction is significant to those users. One major difference relates to safety. Hunters frequently carry backpacks, rifles, portable seats, and other equipment on their backs and shoulders. The typical method of carrying a firearm is to carry it on the shoulder. A hunter carrying a firearm in this manner, when squeezing through the slit-like opening of the claimed invention, is subject to a risk that the firearm may accidentally discharge if the bolt were to bang against the hunter's body or equipment and move to an open position. In contrast, the triangular flap of the accused products creates an opening through which one may freely and easily enter or exit the blind while carrying equipment.

Mr. Paulsen's declaration does not show any genuine questions of material fact with respect to equivalence. Mr. Paulsen simply repeats the plaintiff's conclusory argument that the accused products are "knockoffs" of the claimed invention. His declaration does not address any differences in the operation or results achieved by the openings of the claimed invention and the accused products.

The plaintiff's reliance on the doctrine of equivalents is misplaced for other reasons. The doctrine of equivalents should not be given such broad play as to effectively eliminate a claim limitation. *See Hilton Davis*, 520 U.S. at 29. The requirement of "a closable vertical opening along one of said side edges" and the requirement of "a closable vertical opening along one vertical corner of said structure" would be rendered meaningless if a triangular flapped opening that extends sideways into a tent wall were considered an equivalent.

Furthermore, a patentee may not obtain, through the doctrine of equivalents, protection for designs that he could not have patented directly. *See Key Mfg. Group, Inc. v. Microdot*, 925 F.2d 1444, 1448 (Fed. Cir. 1991); *Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*, 904

F.2d 677, 684 (Fed. Cir. 1990). "[S]ince prior art always limits what an inventor could have claimed, it limits the range of permissible equivalents of a claim." *Wilson Sporting Goods*, 904 F.2d at 684.  The '482 Patent and U.S. Patent No. 4,819,680 to Beavers show that a cube-shaped hub-style tent was known in the prior art.  Other prior art patents show that a triangular flapped opening cut into a wall of a tent was well known in the art. *See* U.S. Patent No. 3,941,140 and U.S. Patent No. 4,026,312.  In addition, U.S. Patent No. 4,077,417 to Beavers discloses that triangular openings may be positioned between tent struts in a tent cover supported by hub and strut style subframe assemblies. *See* U.S. Patent No. 4,077,417, col. 5, ll. 3-17.  The alleged equivalent is obvious in light of these prior art patents, or if not obvious at least foreseeable.  The alleged equivalent does not involve any later developed technology.  If Mr. Stumbo had intended to claim a hub-style tent having a triangular flapped opening cut into a side wall, he could have written claims to cover that alternative.  The doctrine of equivalents does not allow recapture of subject matter excluded by a claim drafting decision.  *See Planet Bingo, LLC v. Weingardt*, No. 05-1576, __ F.3d __ , 2006 WL 3615302 at *6 (Fed. Cir. Dec. 13, 2006).

Based on the foregoing, it is

ORDERED that the motion for summary judgment by defendant Ameristep Corporation, Inc. is granted.  The clerk will enter judgment declaring U.S. Patent No. 5,628,338 not infringed

by the defendant's "DOGHOUSE," "BIGHOUSE™ TSC," "BRICKHOUSE™ TSC," "BRICKHOUSE™ TSC HALF-N-HALF," and "BABY BRICKHOUSE™ products and dismissing the plaintiff's claims with prejudice.

Dated:  January 25, 2007

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch, Senior District Judge